UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL HERNANDEZ,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>IGNITE RESTAURANT GROUP, INC., et al.,<br><br>　　　Defendants. | No. 2:12-cv-02468-MCE-AC<br><br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Plaintiff Rachel Hernandez brought this action in state court seeking redress against her former employer Ignite Restaurant Group ("Ignite"), doing business as Joe's Crab Shack, and her former supervisor Kelly Alton for injuries allegedly arising out of Plaintiff's wrongful termination and employment discrimination. (Ignite's Notice of Removal, ECF No. 1, Ex. A.) Ignite thereafter removed the action to this Court on the basis of the Court's diversity jurisdiction pursuant to 28 U.S.C. §1441. (ECF No. 1.) Presently before the Court is Plaintiff's Motion to Remand and for Attorney's Fees. (ECF No. 5).

///

///

1

1 For the reasons that follow, the Court GRANTS Plaintiff's Motion to Remand and
2 DENIES her Motion for Attorney's Fees.[1]

## BACKGROUND

The facts relevant to Plaintiff's Motion to Remand are as follows: Plaintiff was employed by Defendant Ignite as a server at Joe's Crab Shack from March 2010 until January 2012. (Compl. ¶¶ 1, 10.) Ignite is a Delaware corporation authorized to do business in California. (Id. ¶ 2.) Defendant Alton was Plaintiff's supervisor at Joe's Crab Shack. (Id. ¶ 3.) Both Plaintiff and Defendant Alton are California citizens. (Id. ¶¶ 1, 3.)

In November-December 2011, Plaintiff was on medical leave due to her becoming ill with aseptic meningitis. (Id. ¶ 10.) When Plaintiff returned to work, she had work restrictions which consisted of no heavy lifting and rest breaks as needed. (Id. ¶ 11.) However, because Plaintiff was afraid that she would be terminated, she started performing tasks outside of her restrictions despite suffering pain. (Id.) Subsequently, Plaintiff had several customers' complaints, which she believes were unjustified. (Id. ¶ 12.) On January 29, 2012, Defendant Alton terminated Plaintiff because of customers' complaints. (Id. ¶ 14.) According to Plaintiff, other employees with similar customer complaints were not terminated. (Id.) Alton allegedly told Plaintiff that Plaintiff needed to go on unemployment and take time to get better because of Plaintiff's meningitis and "brain injury." (Id. ¶ 15.) Thus, according to Plaintiff, she was terminated because Alton believed that Plaintiff was disabled. (Id. ¶ 14.)

Subsequently, Alton allegedly told Plaintiff's co-employees about the reasons for Plaintiff's termination and that Plaintiff needed to go on unemployment and "get [herself] better," allegedly inferring that Plaintiff was disabled or ill. (Id. ¶ 17.)

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

2

Plaintiff claims that Alton's conduct and the disclosure of Plaintiff's medical condition to third parties was extremely embarrassing to her. (Id.)

On July 10, 2010, Plaintiff filed her lawsuit in the Superior Court of California, County of Sacramento, alleging that Ignite had violated multiple provisions of California's Fair Employment and Housing Act, §§ 12920 et seq., and also failed to pay Plaintiff's wages when due in violation of California Labor Code § 201. (Id. ¶¶ 22-50.) Additionally, Plaintiff alleges that both Ignite and Alton violated Plaintiff's right of privacy under California Constitution by disclosing Plaintiff's medical condition to third parties. (Id. ¶¶ 58-63.) Finally, Plaintiff's Complaint asserts a claim for defamation against both Ignite and Alton. (Id. ¶¶ 65-80.) On September 28, 2012, Ignite removed the action to this Court on the basis of the Court's diversity jurisdiction. (ECF No. 1.) Although both Plaintiff and Defendant Alton are California citizens, Ignite argues that the Court has diversity jurisdiction over this action because Alton is a "fraudulently joined" defendant. (Id. at 3-6.)

## LEGAL STANDARD APPLICABLE TO REMOVAL AND REMAND

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Generally, district courts have original jurisdiction over civil actions in two instances: (1) where a federal question is presented in an action arising under the Constitution, federal law, or treaty; or (2) where there is complete diversity between the parties. 28 U.S.C. §§ 1331, 1332. Removal based on the court's diversity jurisdiction is proper when the amount in controversy exceeds $75,000, and where the matter is between the citizens of different states. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant. Id.; Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996).

///

1  However, "one exception to the requirement for complete diversity is where a non-
2  diverse defendant has been 'fraudulently joined.'" <u>Morris v. Princess Cruises, Inc.</u>,
3  236 F.3d 1061, 1067 (9th Cir. 2001).  In this situation, the court may ignore the presence
4  of a sham defendant for the purpose of establishing diversity.  <u>Id.</u>  Fraudulent joinder
5  occurs "[i]f the plaintiff fails to state a cause of action against a resident defendant, and
6  the failure is obvious according to the settled rules of the state."  <u>Hamilton Materials, Inc.</u>
7  <u>v. Dow Chem. Corp.</u>, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting <u>McCabe v. Gen.</u>
8  <u>Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987)).  Stated differently, "a non-diverse
9  defendant is deemed a sham defendant if, after all disputed questions of fact and all
10 ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff
11 could not possibly recover against the party whose joinder is questioned."  <u>Nasrawi v.</u>
12 <u>Buck Consultants, LLC</u>, 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011).
13     The removing party bears the burden of establishing federal jurisdiction.
14 <u>Ethridge v. Harbor House Restaurant</u>, 861 F.2d 1389, 1393 (9th Cir. 1988).  The removal
15 statute is strictly construed, and the court resolves any doubt in favor of remand.
16 <u>Provincial Gov't of Marinduque v. Placer Dome, Inc.</u>, 582 F.3d 1083, 1087 (9th Cir.
17 2009).  In making its determination, the court may look beyond the pleadings, and the
18 removing party is entitled to present facts that prove fraudulent joinder.  <u>Morris</u>, 236 F.3d
19 at 1067.  If there is any doubt as to the right of removal in the first instance, remand must
20 be granted.  <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).
21
22                              **ANALYSIS**
23
24     In her Motion to Remand, Plaintiff argues that the removal of this action by Ignite
25 was not proper for two reasons: (1) Defendant Alton had not joined in the notice of
26 removal; and (2) there is no diversity between the parties because Alton is not a sham
27 defendant.  (ECF No. 5, at 1-2.)
28 ///

### A. Alton's Failure to Join Ignite's Notice of Removal

Plaintiff argues that Ignite's removal of the action to this Court is defective because Defendant Alton did not join Ignite's Notice of Removal. (ECF No. 5, at 1-2.) Ignite counters that Defendant Alton did not have to join the notice because Alton had not been served with the Complaint, Summons, or any other documents in this action prior to removal. (ECF No. 1 at 3; ECF No. 6 at 2-3.)

Pursuant to 28 U.S.C. § 1446, "all defendants who have been properly joined and served must join in or consent" to the removal of a civil action over which the district courts have original jurisdiction." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). Thus, there is no requirement for non-served defendants to join the petition for removal. See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) ("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties. This general rule applies, however, only to defendants properly joined and served in the action.") (internal citations omitted). There is no indication in the record that Defendant Alton had been served by Plaintiff prior to removal. Accordingly, Alton's failure to join Ignite's Notice of Removal does not render the removal defective.

### B. Fraudulent Joinder

Ignite asks the Court to disregard Alton's citizenship for the purpose of determining diversity arguing that Alton is a "sham" defendant who was fraudulently joined by Plaintiff. (ECF No. 1, at 3.) As explained above, fraudulent joinder occurs "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Hamilton Materials, Inc., 494 F.3d at 1206.

///

5

1  However, "if there is a <u>possibility</u> that a state court would find that the complaint states a
2  cause of action against any of the resident defendants, the federal court must find that
3  the joinder was proper and remand the case to the state court.'" <u>Hunter v. Phillip Morris</u>
4  <u>USA</u>, 582 F.3d 1039, 1046 (9th Cir. 2009) (emphasis added).  Therefore, remand must
5  be granted unless Ignite demonstrates that Plaintiff "would not be afforded leave to
6  amend [her] complaint to cure [the] purported deficiency."  See <u>Burris v. AT&T Wireless,</u>
7  <u>Inc.</u>, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006).

8  Plaintiff's Complaint names Alton as defendant in two causes of action:
9  (1) Unlawful Public Exposure of Private Facts in Violation of California Constitution; and
10 (2) Defamation.  In its Notice of Removal, Ignite argues that both of Plaintiff's claims
11 against Alton are clearly barred by the "manager's privilege" under California law.  (ECF
12 No. 1, at 4-6.)  According to Ignite, "there can be no individual liability [under California
13 law] for managers for tort claims arising from the course and scope of employment."  (<u>Id.</u>
14 at 4.)  California law on the issue of the manager's privilege is not as clear as Ignite
15 wants the Court to believe.  In fact, as one California court noted, [t]he scope of the
16 manager's privilege, as developed under California's common law . . . , is neither clear
17 nor consistent."  <u>Huynh v. Vu</u>, 111 Cal. App. 4th 1183, 1194 (2003); <u>see</u> <u>also</u> <u>Graw v.</u>
18 <u>Los Angeles County Metro. Transp. Auth.</u>, 52 F. Supp. 2d 1152, 1155 (C.D. Cal. 1999)
19 (noting that "there is no consensus of California decisions" on when the manager's
20 privilege applies).

21 The doctrine of the manager's privilege was developed by California courts in the
22 context of claims alleging intentional interference with contractual relationship against a
23 supervisor who made a decision to fire a plaintiff. See <u>Huynh</u>, 111 Cal. App. 4th at 1194
24 ("[T]he [manager's] privilege is most often applied to bar actions against managers of a
25 business entity that charge the managers with inducing the entity to breach a contract.").
26 ///
27 ///
28 ///

1  California courts uniformly hold that the manager's privilege bars lawsuits by a
2  terminated employee against a supervisor for intentional interference with contractual
3  relationship explaining that a manager who fires an employee cannot be "held liable for
4  inducing the breach, for their action was that of the corporation itself." Marin v. Jacuzzi,
5  224 Cal. App. 2d 549, 554 (1964); see also Halvorsen v. Aramark Uniform Servs., Inc.,
6  65 Cal. App. 4th 1383, 1391 (1998) (stating that the manager's privilege is an affirmative
7  defense to the tort of intentional interference with contractual relationship); Aalgaard v.
8  Merchants Nat'l Bank, Inc., 224 Cal. App. 3d 674, 684-86 (1990) (concluding that a
9  terminated employee's claim of intentional interference with contract against a supervisor
10 was barred by the manager's privilege); Becket v. Welton Becket & Assocs., 39 Cal.
11 App. 3d 815, 823 (1974) ("The immunity of a corporate officer . . . from liability for the tort
12 of inducing a breach of contract on behalf of the corporation is sometimes referred to as
13 the 'manager's privilege.'"); Graw, 52 F. Supp. 2d at 1154 ("Thus, the manager's
14 privilege is merely an application of the general rule that the tort of intentional
15 interference with economic relations applies only to disinterested parties.  As an
16 interested party, a manager's actions are privileged.").  In Los Angeles Airways, Inc. v.
17 Davis, the Ninth Circuit similarly explained that, under California law, "a manager is said
18 to be privileged to induce the breach of an employment contract between his employer
19 and another employee." 687 F.2d 321, 326 (9th Cir. 1982).
20       However, it is not clear whether the manager's privilege applies outside the scope
21 of claims for intentional interference with contract.  The Court is aware of only one case,
22 on which Ignite primarily relies, stating that the privilege can apply to defamation claims.
23 See Kacludis v. GTE Sprint Commc'ns Corp., 806 F. Supp. 866, 872 (N.D. Cal. 1992).
24 The Kacludis court, without any substantive analysis, concluded that the plaintiff's
25 defamation claim against a supervisor who fired the plaintiff was within the scope of the
26 manager's privilege under California law. Id. at 872.
27 ///
28 ///

1 On the other side, there are numerous cases from both California state courts and district courts refusing to apply the manager's privilege outside the scope of claims for intentional interference with contractual relationship. See Webber v. Nike USA, Inc., 2012 WL 4845549, at *4 (S.D. Cal. Oct. 9, 2012) (holding that, under California law, a tort of intentional infliction of emotional distress is outside the scope of the manager's privilege); Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1179 (N.D. Cal. 2003) (same); E.E.O.C. v. Interstate Hotels, L.L.C., 2005 WL 885604, at *2 (N.D. Cal. Apr. 14, 2005) (concluding that the privilege does not apply to plaintiff's allegations of "harassment and discrimination" by a manager); Morcote v. Oracle Corp., 2005 WL 3157512, at *7 (N.D. Cal. Nov. 23, 2005) (concluding that the manager's privilege does not protect a supervisor who interfered with the plaintiff's contract with a third party (not plaintiff's employer) and explaining that "none of [the cases cited by plaintiff] stands for the broad proposition that managers may not be sued in tort for actions taken in the scope of their employment"). The Court is aware of no cases – and Ignite has cited none - applying the manager's privilege to invasion of privacy claims in violation of California Constitution.

It is further not clear whether the manager's privilege, even if applicable to Plaintiff's claims here, is absolute or conditional. See Huynh, 111 Cal. App. 4th at 1195 ("[T]the question of whether the [manager's] privilege is absolute or qualified is 'somewhat muddled in California law,' resulting in a 'knot of authority' on the issue.") (citation omitted); Halvorsen, 65 Cal. App. 4th at 1391 ("There are three formulations of the manager's privilege: (1) absolute, (2) mixed motive, and (3) predominant motive.").

///
///
///
///
///
///

1  To conclude, Judge Patel from the Northern District of California has accurately
2  summarized the state of California law on the issue of the manager's privilege as follows:

> It is certainly questionable whether a managerial privilege could be asserted where the employer's or its agent's or employee's conduct is sufficiently egregious. . . . In addition to this question, it is far from clear under California law whether the managerial privilege is an affirmative defense or part of the plaintiff's cause of action. . . . It is also uncertain whether the privilege, if any, is absolute or conditional. What is clear . . . is that the question of the privilege . . . is bound up in the conduct of the defendant and is thoroughly fact intensive.

Calero, 271 F. Supp. 2d at 1180 (internal citations omitted).  In light of this lack of clarity, it cannot be said that the manager's privilege clearly bars Plaintiff's defamation and invasion of privacy claims against Defendant Alton under the "settled" California law. See Hamilton Materials, Inc., 494 F.3d at 1206.  In fact, as the above analysis demonstrates, no "settled" law exists on the issue of the manager's privilege in California.  Because there exists "a non-fanciful possibility" that Plaintiff can state a claim under California law against the non-diverse defendant, the Court must remand this case to state court. See Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).

In sum, Ignite has failed to convince the Court that there is no "possibility" for Plaintiff to assert a viable claim against Defendant Alton under California law. See Hunter, 582 F.3d at 1046.  Since Ignite has not met its heavy burden of demonstrating that Alton is a sham defendant, no complete diversity exists between the parties to this litigation and this action must be remanded.

///
///
///
///
///
///

### C. Plaintiff's Motion for Attorney's Fees

Plaintiff requests the Court award her attorney's fees and costs associated with bringing the instant motion to remand. (ECF No. 5, at 8.) The federal removal statute allows the Court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005). Given the lack of clarity in the case authority on the issue of the manager's privilege under California law, the Court finds that Ignite's decision to remove this case was not objectively unreasonable and thus denies Plaintiff's motion for attorney's fees.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is GRANTED and Plaintiff's Motion for Attorney's Fees is DENIED. The case is remanded to the Superior Court of California, County of Sacramento.

IT IS SO ORDERED.

Dated: January 8, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT